Filed 2/11/16  The Pepper Group Nevada v. City of Desert Hot Springs CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

**IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA**

**FOURTH APPELLATE DISTRICT**

**DIVISION TWO**

| | |
|---|---|
| THE PEPPER GROUP NEVADA, LLC, | |
| Plaintiff and Appellant, | E062990 |
| v. | (Super.Ct.No. INC1300452) |
| CITY OF DESERT HOT SPRINGS, | OPINION |
| Defendant and Respondent. | |

APPEAL from the Superior Court of Riverside County.  John G. Evans, Judge. Affirmed.

Reid & Hellyer and Michael G. Kerbs for Plaintiff and Appellant.

Green de Bortnowsky, Charles R. Green, Nicholas Hermsen, and Tuan-Anh Vu for Defendant and Respondent.

In 2002, the City of Desert Hot Springs (City) began imposing a development impact fee (impact fee) on all new development, including on the installation of a mobilehome in a mobilehome park.  In January 2011, the Pepper Group Nevada, LLC (Pepper) acquired a mobilehome park within the City.  In October 2011, Pepper asked the

City to forgo the collection of impact fees in its park; the City denied the request. In March 2012, however, the state Department of Housing and Community Development (Department) determined that the City's impact fees were illegal as applied to mobilehome parks, because they violated the Mobilehome Parks Act (Health & Saf. Code, §§ 18200-18700) (Act).

In May 2012, Pepper presented a government claim to the City for damages based on the illegality of the impact fees; specifically, it sought a refund of impact fees collected in the past, plus rents lost due to the existence of the impact fees. When its claim was denied, Pepper filed this action. The trial court granted summary judgment against Pepper and in favor of the City; it ruled that the government claim was untimely because it was filed more than one year after the claim accrued.

Pepper appeals. Its sole appellate contention is that its claim actually accrued less than one year before May 2012. The trial court, however, was correct. Hence, we will affirm.

I

FACTUAL BACKGROUND

In 1986, the City adopted an ordinance by which it assumed the responsibility for local enforcement of the Act.

In 2002, the City adopted another ordinance making an impact fee applicable to all new developments. Thus, an impact fee applied to the installation of a new mobilehome in a mobilehome park.

Palm View Estates (Palm View) is a mobilehome park in the City's jurisdiction. Between February 2003 and December 2008, the City collected a total of $22,847.48 in impact fees in connection with the installation of mobilehomes at Palm View. One of the entities that paid impact fees during this time was Superior Manufactured Housing (Superior). In June 2011, the city collected another $7,057.57 in impact fees from one Jim Waterman.

Each time, the impact fee was paid by the applicant for the building permit. Thus, neither Pepper nor any of the previous owners or operators of Palm View paid any impact fees.

Meanwhile, in January 2011, Pepper acquired Palm View. At some point, Superior assigned its right to a refund of impact fees paid in connection with Palm View to Pepper.[1]

Palm View had extremely low occupancy. To make a profit, it needed to attract tenants who would install more mobilehomes until it was at or near full occupancy. On October 10, 2011, at a City Council meeting, Pepper asked the City to waive impact fees in Palm View. The City denied the request.

---

[1] Mountain Financial Group, LLC also purported to assign its right to a refund of impact fees paid in connection with Palm View to Pepper. However, this entity had never actually paid any such impact fees.

It is undisputed that Pepper did not obtain any assignment from Jim Waterman.

On March 28, 2012, the Department ruled that the City's imposition of impact fees on mobilehome parks violated the Act; it therefore revoked the City's local enforcement jurisdiction. The City acquiesced in the Department's ruling.

On May 22, 2012, Pepper presented a government claim to the City. According to the claim, Pepper's damages consisted of:

1. $22,847.48, representing the total impact fees paid in connection with Palm View from February 2003 to December 2008;

2. "At least $143,000," representing lost rent to date; and

3. An unspecified additional amount of lost rent, on the theory that, in the absence of impact fees, Palm View would have become fully leased within nine years.

The City denied the claim on several grounds, including that it was untimely and that it failed to specify "[t]he date, place and other circumstances of the occurrence or transaction which gave rise to the claim . . . ."

On September 26, 2012, Pepper presented an amended government claim to the City. According to the amended claim, the date of the occurrence ran from "the first . . . wrongful collection of [impact fees]," in February 2003, through "the last wrongfully collected [impact fee]," in December 2008. The City denied the amended claim as untimely.

II

PROCEDURAL BACKGROUND

Pepper filed this action on January 18, 2013, asserting causes of action for violation of the Act, nuisance, inverse condemnation, and declaratory relief. Like Pepper's previous government claim, the complaint alleged damages consisting of $22,847.48 in previously paid impact fees, plus "[a]t least $143,000" in lost rent, plus additional lost rent to be shown at trial.

On September 12, 2014, the City filed a motion for summary judgment. It argued, among other things, that Pepper's government claim was untimely.

In its opposition to the motion, Pepper argued that (1) the City had collected one impact fee payment (i.e., the one from Jim Waterman) in mid-2011; and (2) Pepper was seeking lost rent, which continued into 2012.

At the hearing on the motion, Pepper additionally argued that its claim accrued either on October 11, 2011, when Pepper asked the City to waive impact fees, or on March 28, 2012, when the Department declared the impact fees illegal.

The trial court granted the motion. Accordingly, it entered judgment against Pepper and in favor of the City.

III

STANDARD OF REVIEW

"A trial court properly grants summary judgment where no triable issue of material fact exists and the moving party is entitled to judgment as a matter of law. [Citation.]" (*Merrill v. Navegar, Inc.* (2001) 26 Cal.4th 465, 476.)

"[I]n moving for summary judgment, a 'defendant . . . has met' his 'burden . . . if' he 'has shown that one or more elements of the cause of action . . . cannot be established, or that there is a complete defense to that cause of action.  Once the defendant . . . has met that burden, the burden shifts to the plaintiff . . . to show that a triable issue of one or more material facts exists as to that cause of action or a defense thereto. . . .'  [Citation.]" (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 849.)

"In ruling on the motion, the court must 'consider all of the evidence' and 'all' of the 'inferences' reasonably drawn therefrom [citation], and must view such evidence [citations] and such inferences [citations], in the light most favorable to the opposing party." (*Aguilar v. Atlantic Richfield Co.*, *supra*, 25 Cal.4th at p. 843.)

"We review the trial court's decision de novo . . . .  [Citations.]" (*Johnson v. City of Loma Linda* (2000) 24 Cal.4th 61, 65-66.)

## IV

## THE TRIAL COURT CORRECTLY RULED

## THAT PEPPER'S CLAIMS WERE BARRED

Suits against a public entity for money or damages are subject to the Government Claims Act (Gov. Code, § 810 et seq.).

Subject to certain specified exceptions, "Government Code section 905 provides that all claims for money or damages against a local public agency . . . must be presented in accordance with the claims procedures set forth elsewhere. Government Code section 911.2, subdivision (a), provides that all claims other than a claim relating to a cause of action for death or injury to person or property shall be presented no later than one year after the accrual of the cause of action. Claims arising more than one year prior to presentation of the claim are barred. [Citation.]" (*Border Business Park, Inc. v. City of San Diego* (2006) 142 Cal.App.4th 1538, 1562, fn. 20 [Fourth Dist., Div. Two].)

"Accrual of the cause of action for purposes of the government claims statute is the date of accrual that would pertain under the statute of limitations applicable to a dispute between private litigants. [Citations.]" (*Shirk v. Vista Unified School Dist.* (2007) 42 Cal.4th 201, 208-209.)

"A cause of action accrues 'when [it] is complete with all of its elements' — those elements being wrongdoing, harm, and causation. [Citation.]" (*Pooshs v. Philip Morris USA, Inc.* (2011) 51 Cal.4th 788, 797.)

Here, Pepper claimed two types of damages.  First, it claimed the impact fees that had been paid between February 2003 and December 2008.  Because the last of those fees had been paid well over a year before Pepper presented its government claim, any such claim was barred.  In its claim, and also in its complaint, Pepper did not demand the $7,057.57 in impact fees that Jim Waterman had paid in June 2011.  Even if it had done so, however, we can see no theory on which it had any right to them.

Second, Pepper claimed lost rent, both past and future.  It first started to lose rent, however, in January 2011, when it took over Palm View.  And given that it was already claiming "[a]t least $143,000 in lost rent" by May 2012, the only reasonable inference is that its lost rent between January 2011 and April 2011 must have been more than merely nominal.  "[A]lthough a right to recover nominal damages will not trigger the running of the period of limitation, the infliction of appreciable and actual harm, however uncertain in amount, will commence the statutory period . . . .  [N]either uncertainty as to the amount of damages nor difficulty in proving damages tolls the period of limitations." (*Davies v. Krasna* (1975) 14 Cal.3d 502, 514.)  Because Pepper already had a claim for substantial lost rent over a year before it submitted a government claim, this claim, too, was barred.

"[T]he discovery rule, where applicable, 'postpones accrual of a cause of action until the plaintiff discovers, or has reason to discover, the cause of action.'  [Citations.]" (*Aryeh v. Canon Business Solutions, Inc.* (2013) 55 Cal.4th 1185, 1192.)  Pepper, however, does not rely on the discovery rule.  It has not alleged that it did not discover

that it was losing rent until some later time. "Whether the discovery rule applies at all is initially a matter of pleading. . . . 'A plaintiff who relies on this exception must plead facts justifying delayed accrual; the complaint must allege (1) the time and manner of discovery and (2) the circumstances excusing delayed discovery. [Citations.]' [Citation.]" (*Mangini v. Aerojet-General Corp.* (1991) 230 Cal.App.3d 1125, 1150-1151.) "[S]ummary judgment cannot be denied on a ground not raised by the pleadings. [Citations.]" (*Bostrom v. County of San Bernardino* (1995) 35 Cal.App.4th 1654, 1663 [Fourth Dist., Div. Two], italics omitted.) We therefore need not discuss the discovery rule.

Pepper argues that its claim accrued on October 10, 2011, when the City refused its request to waive impact fees. However, Pepper did not suffer any new or different injury at that point. It asserts, "Had the City granted Pepper's . . . request . . . , there would have been no imposition of [impact fees] on the Park and, accordingly, no claim." But this is not true. To the extent that Pepper had any claim for impact fees, those fees had already been paid. Moreover, to the extent that it had any claim for lost rent, some rent had already been lost between January and October 2011. Admittedly, if the City had *granted* Pepper's request, Pepper might have *chosen* to forgo filing suit for those damages. Nevertheless, Pepper's cause of action had already accrued.

Finally, Pepper argues that its claim accrued on March 28, 2012, when the Department ruled that the City's impact fees violated the Act. Again, however, Pepper did not suffer any new or different injury at that point. If the impact fees violated the Act

at all, they violated the Act all along. Pepper did not have to wait for a ruling by the Department before it could file suit.

Once again, Pepper has not alleged that this was when it first discovered that the impact fees were illegal, and it does not invoke the discovery rule. In any event, Pepper already knew all of the facts that made the impact fees illegal; at most, it was ignorant of the law. "The statute of limitations is not tolled by belated discovery of *legal theories*, as distinguished from belated discovery of *facts*." (*McGee v. Weinberg* (1979) 97 Cal.App.3d 798, 803.)

Pepper relies on *Howard Jarvis Taxpayers Assn. v. City of La Habra* (2001) 25 Cal.4th 809. There, a city adopted an ordinance establishing a utility users tax. (*Id*. at p. 813.) More than three years later, the plaintiff filed an action for injunctive and declaratory relief and for mandamus, alleging that the city's imposition and collection of the tax without voter approval violated Government Code section 53723. (*Ibid*.) The applicable limitations period, for an action on a liability created by statute, was three years. (*Id*. at p. 815.)

The California Supreme Court announced that the applicable rule was "continuous accrual" (*Howard Jarvis Taxpayers Assn. v. City of La Habra*, *supra*, 25 Cal.4th at p. 819): "[I]f, as alleged, the tax is illegal, its continued imposition and collection is an ongoing violation, upon which the limitations period begins anew with each collection." (*Id*. at p. 812.) It noted that it was undisputed that an action for a refund of individual tax payments would have been timely. (*Id*. at p. 820.) It concluded that "[s]o long as an

action for refund or injunction could have been brought during the period of continued collection, so could an action for declaratory relief." (*Id.* at p. 821.) It cautioned, "our holding relates only to injuries occurring in the statutory three-year period before suit is brought and applies only to plaintiffs injured by tax collections within the three-year period." (*Id.* at p. 825.)

In a later case, the Supreme Court summarized the *Jarvis* continuous accrual rule as follows: "[A] series of wrongs or injuries may be viewed as each triggering its own limitations period, such that a suit for relief may be partially time-barred as to older events but timely as to those within the applicable limitations period. [Citation.]" (*Aryeh v. Canon Business Solutions, Inc.*, *supra*, 55 Cal.4th at p. 1192.) Thus, "continuous accrual" is actually a misnomer; the rule might more accurately be called the "repeated" or "recurrent accrual" rule.

Here, we do agree that the continuous accrual rule would apply to past impact fee payments.[2] However, Pepper did not make (and did not receive any assignment from a maker of) any impact fee payments within one year before filing. Thus, even under *Jarvis*, its claim for past impact fee payments was barred.[3]

---

[2] The City concurs that "[i]f there was any continuous accrual in this case, it was by the repeated collection of [impact fees] from February 2003 to December 2008."

[3] At oral argument, counsel for Pepper conceded that its claim for "historic fees" was untimely.

The continuous accrual rule could not apply to lost rent, because lost rent is not suffered in any particular amount at any particular time. Hence, it cannot trigger a series of new limitations periods. Rather, the total of past and future lost rent must be approximated and awarded in one lump sum.

We therefore conclude that the trial court properly granted summary judgment based on Pepper's failure to file a timely government claim, subject only to a possible exception for Pepper's inverse condemnation claim, which we will now discuss.

V

INVERSE CONDEMNATION CLAIM

As mentioned earlier, certain claims against a public entity are excepted from the general rule requiring the presentation of a timely government claim. One of these is an inverse condemnation claim. (Gov. Code, § 905.1.)

Pepper's fourth cause of action was for inverse condemnation. The trial court ruled that this cause of action was barred by a three-year statute of limitations.

Pepper has one and only one argument as to why this ruling was erroneous — it simply repeats its assertion that its claim accrued either on October 10, 2011, when the City denied its request for a waiver, or on March 28, 2012, when the Department ruled that the impact fees were illegal. Once again, however, we reject this assertion, because Pepper did not incur any new injury on those dates. Pepper has forfeited any other grounds for an attack on this aspect of the trial court's ruling.

# VI

## DISPOSITION

The judgment is affirmed.  The City is awarded costs on appeal against Pepper.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

<u>McKINSTER          </u>
                                        J.


We concur:

<u>HOLLENHORST        </u>
            Acting P. J.

<u>MILLER             </u>
            J.